FILED IN UNITED STATES DISTRICT
COURT, DISTRICT OF UTAH

JUL - 5 2018

D. MARK JONES, CLERK
BY_____
DEPUTY CLERK

## UNITED STATES DISTRICT COURT

| | |
|---|---|
| Aaron D.T. Needham<br>petitioner<br><br>vs.<br><br>State of Utah et al<br>resident | Case No. 2:15-cv-250<br><br>Petitioners Response<br><br>to Wayne Hollman<br>Defense<br><br>Honorable Judge Clark Waddoeps |

I, Aaron Needham, petitioner pro se submits this

Response to Wayne Hollman's Defense.

Under the motion for New Trial Doc #50 petitioner will be submitting
the following names to be added to this case under Monell
and respondeat superior. to Affirmative link the participants.
in the following supplemental pleading.

Mark L. Shurtleff, individually, Attorney General State of Utah
John Swallow, individually, Attorney General State of Utah
Sean D. Reyes, individually, Attorney General - State of Utah
Gordon Summers, individually, DoPL - lead Investigator
Jacob Taylor, individually, Asst. Atty General - State of Utah
Scherie Wilcox, individually, Paralegal - Asst. Atty General - State of Utah
Terry Powell, individually, Investigator - Asst. Atty General - State of Utah

1/25

Aric Cramer, Individually, So. Utah Public defender
Brock Karrington, Individually-So. Utah Investigator
Candice Reed, Individually - So. Utah Public Defender - Prosecutor Attorney General
Doug Terry, Individually- So Utah Public defender
Ben Gordon, Individually So. Utah Public defender
Jack Burns, Individually, So Utah Public defender
Clement Tebos, Individually,
John Tebos, Individually
Jolie Bowan, Individually
John Grelish, Individually
Brydie Pratt, Individually
Greg Adamson, Individually
BACT LLC
Bonneville Builders
BB Management
Wells Fargo
Jamie Starks, individually, mortgage officer Wells Fargo
Kurt Swanger, individually, Building Dept. City of Mesqoite Inspector
20/20 properties LLC
Chad Ferguson, individually
Kelly Hertz, individually
Allam Carter, individually
Christine Carter, individually
Deseret News LLC
St. George Spectrum LLC
Dr. Roberts, Individually, Doctor Draper prison
Dr. Burnham, Individually, Doctor Draper prison
Shelli Curtis, Individually, case manage, fifth Dist Ct. - Washington County
Gary G. Kuhlman, Individually, So. Utah, Public defender
Nicolas Turner, Individually, So. Utah, public defender

Medtech Bertram- individually, med-tech Draper Prison
Officer Gordon, individually, Case manager- Draper Prison
Officer Skinner, individually, Seargent-infirmary- Draper prison
Elizabeth lewis, individually, casemanager- Draper prison infirmary
Captain Holloday, individually, Draper prison
Levt. Mason, individually, Draper Prison.
Rollin Cook, individually, CEO State Prison System.
Jeanne Inouye, Individually, Asst. Att. General.
* Petitioner reserves the right to add individuals and corporations
to the suit as we progress on discovery.

* Petitioners injuries could not have occurred with out collective
involvement of all individuals listed.

* Petitioner will submit a supplemental pleading affirmatively
linking all parties and individuals to the conspiracy.

Doe : Inclusive X
Roe Inclusive X

Memorandum
Introduction

Petitioner is an inmate at the Utah State Prison caused by the obstruction of justice and interference by state officials to use suborn perjured testimony and withhold evidence to support the disability discrimination purported by Wayne Holtman, investigator for ~~xxxxxxx~~ Division of Professional License.

Petitioner was convicted in January 2013 for communication fraud § 76-10-1801 and pattern of unlawful activities. § 76-10-1603 by the Attorney General office of State of Utah who prosecuted petitioner after terminating a investigation action in 2007, (§ 77-2-3 Prior to the commencement of prosecution, the prosecutor may, without approval of a magistrate, authorize a termination of investigative action when it appears that further investigative action is not in the public interest.

Statute § 76-1-404 (1)

If a defendant's conduct establishes the commission of one or more offenses within the concurrent jurisdiction of this state and of another jurisdiction, federal or state, the prosecution in the other jurisdiction is a __bar__ to a subsequent prosecution in this state if:

(1) the former prosecution resulted in an acquittal, conviction or termination of prosecution, as those terms are defined in Section 76-1-403 and

(2) the subsequent prosecution is for the same offense or offenses,

3/25

This issue should not be dismissed under the allegations that the statute of limitation applies.

Petitioners disability existed when the right of action accrued. see §78B-2-109

A person may not take advantage of a disability, unless it existed when the person's right of action accrued.

§78B-2-110

When two or more disabilities coexist at the time the right of action accrues, the limitation does not attach until all are removed.

§78B-2-224

A statute of limitations may not be applied to a person's ability to bring an action during in which the person has a legal disability. Time is tolled.

Petitioner suffered an auto accident in January 8th, 1987.

Wayne Hollman denied to renew petitioners license in 2003 after petitioner being licensed since 1997.

Kim Quoch reinstated petitioners license in 2005.

BACT filed a complaint in June 2006 that petitioner stole $800,000. — as part of a joint venture.

Wayne Hollman terminated his investigation in 2007.

Mark Shurtleff filed charges for the same charges related to BACT in 2008.

Due to the continued attacks and level of torture involved
by state officials and private citizens to conspire and join
the highway of discrimination as the State of Utah seeks to
make petitioner another statistic.

## Factual Background

Petitioner presents the following facts taken from the Exhibits
presented to this court.

1. Plaintiff was licensed as a general contractor in the
State of Utah in 1997.

2. Wayne Holtman refused to renew petitioners license due to
his disability in violation of Title II of the ADA after demanding
petitioner provide all (3) three types of financial audits
from Kemp, Burdick, Hinton and Heall, Dean Burdick and
$25,000.- in 2003.

3. With 4 million dollars in projects and 189 lot subdivision
petitioner fixed sale due to Holtman attacks and left to
work in Nevada.

4. Due to proposition by Clement Tebbs of BACT to joint venture
on projects in Utah, petitioner returned to Utah.

5. Kim Queen of DOPL renewed petitioners license in Sept 2005.

6. In June 2006, Clement Tebbs of BACT filed a complaint with
DOPL that petitioner stole $800,000.- from the joint venture.

2

7. In September 2006, petition and his counsel met with Wayne Holhman, Gordon Summers and Kim Orsech at DOPL and hand delivered an copy of the BXCT Audit of all transactions in the joint venture and second copy was provided to give to Mark Shurtleff in 2006.

8. Due to Wayne Holhmans statement "that disabled individuals need not be general contractors and this why, they can't manage money." Holhman on July 2, 2006 threatened petitioner to turn in his license or spend the next 20 years in prison.

9. After months of discussions with petitioners accountant, Holhman renewed petitioners license in 2007 and terminated the investigation.

10. Due to these attacks by Holhman, they played a role of stress on petitioners marriage who separated in 2007.

11. Petitioner was hospitalized due to health issues

12. Due to hospitalization, petitioner had a insurance that went unresolved in 2007. in case no. 0715006692

13. In October 2008, Mark Shurtleff, State of Utah Attorney general filed charges for stealing "800,000.– from the BXCT joint venture that Holhman terminated investigation in 2007.

14. Petitioner was hospitalized again in 2008

15. In November 2009, petitioner was hospitalized for several months due to two surgeries.
Two weeks after being released from the hospital, petitioner was coerced into signing a plea in abeyance while heavily medicated under the condition that if petitioner was hospitalized, the court would revise the plea.

16. Plea revised in December 2010 due to hospitalization.

17. Plea revised in November 2011 due to hospitalization.

18. Plea revised in June-July 2012 due to hospitalization.

19. January 2013 petitioner convicted of $800,000.- charge alleged by BACT for the same action identified in item #9.
In Case No. 101500067.

20. Court rescheduled status hearing in January 2014 Case No. 71500692 due to evidential hearing in No. 101500067 delays.

21. Court rescheduled status hearing in March 2014 for No. 71500692 due to evidential hearing in no. 101500067 delays

22. Court rescheduled status hearing in April 2014 for No. 71500692 due to evidential hearing in no. 101500067 delays

23. Court rescheduled status hearing in May for no. 71500692 due to evidential hearing in no. 101500067 delays

24. Court no. 101500067 denied new trial motion.

3

25. Petitioner sentenced due to none payment for incarceration caused by No. 101500067 for the same debt resolved in #9.

Also, in October 2006, BACT filed a Lis Pendens alleging the $800,000.— threat in case No. 060501877 on 7 million dollars of petitioners projects.

In Nov 2006, petitioner attorney filed for release

In Dec 2006, court ordered release of Lis pendens claiming the $800,000 did not exist—alleged by BACT.

26. Just before trial of #19, petitioner was hospitalized for acute renal failure.

27. IHC hospital helped petitioner get through the trial in January 2013, but was hospitalized again three (3) days after trial.

At this trial, Candice Reed and Doug Terry of Southern Utah public defenders and Doug Terry the CEO withheld all witnesses and refused to present any of petitioners material evidence

28. In both case No. 715000692 that was directly attacked by case No. 101500067 the court will find that appellate counsel continued the conspire by wanting to file an Anders brief refusing to present material evidence.

29. Since the day of incarceration, Dr. Roberts and Dr. Burnham manipulated and withheld medical supplies to maintain the infection(s).

30. Eventhough, petitioner has attended some appts at the

University Hospital, due to official interference petitioner has attended less then 43% of those appointments.

31.  The pictures in Exhibit ____ of the University Hospital would clinic shows the detailed effects and injuries to petitioners legs and back side.

ALL of this because Wayne Hollman does not believe WHEEL CHAIR Individuals should not be Contractors.

With the Multiple number of State officials and private citizen who violate petitioners rights of due process of law it must be considered that there are others in the State of Utah who discriminate against disabled.

10/25

## Legal Standard

When evaluating a qualified immunity defense, after identifying the constitutional right allegedly violated, courts must determine whether the conduct was objectly reasonable in light of clearly established law at the time it took place. See. Anderson v. Creighton 483 U.S. 635, 639-40 107 S.Ct 3034 97 L.Ed 2d 523 (1987); Harlow v. Fitzgerald 457 U.S. 800, 818 102 S.Ct 2727, 73 L.3d 2d 396 (1982).

The court also relied on Norton v. Liddel 620 f.2d 1375 (10th Cir 1980). which found an actionable constitutional violation when the sheriff and prosecutor conspired to cause a false information to issue, charging the plaintiff with inciting a riot.

In Hope v. Pelzer, the Supreme Court emphasized

for a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent. 536 U.S. 730, 739, 122 S.Ct 2508, 153 L.Ed 2d 666 (2002)

The court proceeded to discuss U.S v. Lanier 520 U.S. 259, 117 S.Ct 1219, 137 L.Ed 2d 432 (1997), which held that the "clearly established" prong of the qualified immunity analysis is identical to the "fair warning" standard given to officials facing criminal charges pursuant to 18 U.S.C § 242 (criminalizing the deprivation of a citizens constitutional rights under color of state law. id at 270-71.

In an effort to summarize and synthesize the courts approach towards clearly established law.
Hope concluded:
Officials can still be on notice that their conduct violates established law even in novel factual circumstances. Indeed, in Lanier, we expressly rejected a requirement that previous cases be "fundamentally similar." Although earlier cases involving "fundamentally similar" facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding .... The salient question .... is whether the state of the law [at the time of the conduct] gave respondents fair warning that their alleged treatment of plaintiff was unconstitutional. 536 U.S. at 741, 122 S.Ct 2508.

Hope thus shifted the qualified immunity analysis from a scavenger hunt for prior cases with precisely the same facts toward the more relevant inquiry of whether the law put officials on fair notice that the described conduct was unconstitutional. As this court held even prior to Hope, qualified immunity will not be granted if government defendants fail to make reasonable applications of the prevailing law to their own circumstances." Currier v. Doran 242 F.3d 905, 923 (10th Cir 2001) (quoting Murrell v. Sch Dist No. 1 186 F.3d, 1238, 1251 (10th Cir 1999).

The degree of specificity required from prior case law depends in part on the character of the challenged conduct. The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case

5

law to clearly establish the violation. See Vinyard v. Wilson 311 f. 3d 1340 (11th Cir 2002) (noting that the constitutional provision may be so clear and the conduct so bad that case law is not needed to establish that this conduct cannot be lawful.") cf. Austin v. Hamilton 945 f. 2d 1155, 1158 (10th Cir 1991). ("It is only by ignoring the particularized allegations of deplorable violence and humiliation advanced by plaintiffs that defendants are able to argue for qualified immunity.

No one could doubt that the prohibition on falsification or omission of evidence, knowingly or with reckless disregard for the truth, was firmly established as of 1986, in the context of information supplied to support a warrant for arrest. In Stewart 915 f. 2d. at 581-83, the plaintiff alleged violations of his fourth and fourteenth Amendments rights arising from a local policy force inadequate investigation, made material misrepresentations and omissions in an affidavit in support of a warrant without probable cause.

The court analyzed whether the law prohibiting such conduct was clearly established on January 8, 1986. Stewart noted Supreme Court ruling in franks v. Delaware 438. U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) clearly established that knowingly or with reckless disregard for the truth, including false information in the affidavit supporting the arrest warrant constituted a fourth Amendment violation. Id at 581-82.

Also, the court held that at the time defendant submitted his affidavit and arrested plaintiff, it was clearly established violation of plaintiff fourth amendment and fourteenth Amend. rights to knowingly or recklessly omit from an arrest affidavit information which, if included would have vitiated probable cause." id. at 582-83.

A similar analysis applies under the Due process clause. Long before the events in question, the Supreme Court held that a defendants due process rights are implicated when the state knowingly uses false testimony to obtain a conviction. Pyle vs. Kansas 317 U.S. 213, 216, 63 S.Ct. 177, 87 L.Ed 214 (1942) or withholds exculpatory evidence from the defense, Brady v. Md 373 U.S. 83, 83 S.Ct 1194, 10 L.Ed 2d 215 (1963)

Title II of the ADA is designed to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities § 12101 (b)(1), (b)(4) also.

Title II of the ADA §§ 12131-12134 prohibits any public entity from discriminating against "qualified" persons with disabilities in the provisions or operations of public services, programs or activities. Title II of ADA includes and defines the term public entity to include state or local governments, as well as their agencies and instrumentalities. § 12131 (1).

Title II seeks to enforce this prohibition on irrational disability discrimination. It also seeks to enforce a variety of other basic constitutional guarantees, infringements of which are subject to more searching judicial review. See eg. Dunn v. Blumstein 405 U.S. 330, 336-337 (1972); Shapiro v. Thompson 394 U.S. 618, 634 (1969); Skinner v. Oklahoma ex rel Williamson 316 U.S. 535, 541 (1942); Tennessee v. lane.

These rights include right of access to the courts, first Amendment; right confrontation clause and effective assistance of counsel under sixth Amendment; right to be present at all stages of trial where his absence might frustrate the fairness of the proceedings. Faretta v. Calif. 422 U.S. 806, 819 n.15 (1975). The due process clause

requires the states to afford certain litigants a meaningful opportunity to be heard by removing obstacles to their full participation in judicial proceedings. Boddie v. Connecticut 401 U.S. 371, 379 (1971); Congress has identified unconstitutional treatment of disabled persons by state agencies in a variety of settings including unjustifiable commitments. Jackson v. Indiana 406 U.S. 715 (1972).

So, to survive a rule 12 (b)(6) fed R. Civ. P. motion to dismiss a § 1983 claim, a plaintiff must allege
(i) a violation of rights protected by the federal constitution or created by federal statute or regulation
(2) proximately caused
(3) by the conduct of a person
(4) who acted under color of any statute, ordinance, regulation, custom, or usage of any State or Territory... "Summum v. City of Ogden 297 f. 3d 995, 1000 (10th Cir 2002).

A municipalities can only be liable under § 1983 if it took "action pursuant to official municipal policy of some nature [that] caused a constitutional tort." Monell v. Dept of Soc Sec. 436 U.S. 658, 691, 98 S.Ct 2018, 56 L.Ed 2d 611 (1978). In Pembaur v. City of Cincinnati 475 U.S. 469, 106 S.Ct 1292, 89 L.Ed 2d 452 (1986), the supreme court further developed the rule expressed in Monell, stating "the official policy requirement was intended to distinguish acts of the municipality from acts of employees of the municipalities, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible. id at 479, 106 S.Ct 1292.

The court recognized, however that municipal liability may be imposed for a single decision by municipal policy makers

under appropriate circumstances. Id at 480, 106 S.Ct 1292.

But the court emphasized that "municipal liability attaches only where the decision maker possesses final authority to establish municipal policy with respect to the action ordered." Id at 481, 106 S.Ct 1492. Nonetheless "if the decision to adopt that particular course of action is properly made by that government authorized decision maker(s), it surely represents an act of official government policy as that term is commonly understood." Id

In providing further contours to the rules regarding municipal liability, the Supreme Court has noted that a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Bd of County Comms v. Brown, 520 U.S. 397, 404, 117 S.Ct 1382, 137 L.3d 2d 626 (1997). In this context, "when an official policy itself violates federal law, issues of culpability and causation are straight forward; simply proving the existence of the unlawful policy puts an end to the question. Barney v. Pulsipher 143 F.3d 1299, 1307 (10th Cir 1998).

Also, the court may rely on the facts as alleged in the complaint, but may also rely on all documents adopted by reference in the complaint, documents attached to the complaint, or facts that may be judicially noticed. See Tellabs Inc. v. Makor Issues + Rights Ltd 551 U.S. 308, 322-323 (2007); Hall v. Bellmon 935 F.2d 1106, 1112 (10th Cir 1991)

under appropriate circumstances. Id at 480, 106 S.Ct 1292.

But the court emphasized that "municipal liability attaches only where the decision maker possesses final authority to establish municipal policy with respect to the action ordered Id at 481, 106 S.Ct 1492. Nonetheless "if the decision to adopt that particular course of action is properly made by that Government authorized decision maker(s), it surely represents an act of official government policy as that term is commonly understood." Id

In providing further contours to the rules regarding municipal liability, the Supreme Court has noted that a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Bd of County Comrs v. Brown 520 U.S. 397, 404, 117 S.Ct 1382, 137 L.3d 2d 626 (1997). In this context, "when an official policy itself violates federal law, issues of culpability and causation are straight forward; simply proving the existence of the unlawful policy puts an end to the question. Barney v. Pulsipher 143 F.3d 1299, 1307 (10th Cir 1998).

Also, the court may rely on the facts as alleged in the complaint, but may also rely on all documents adopted by reference in the complaint, documents attached to the complaint, or facts that may be judicially noticed. See Fed R Civ P. 10 c; Tellabs Inc v. Makor Issues & Rights Ltd 551 U.S. 308, 322-323 (2007); Hall v. Bellmon 935 F. 2d 1106, 1112 (10th Cir 1991)

17/25                                                                                                    7

Legal Argument

Petitioner has been seriously challenged due to direct and indirect interference by State officials who disrupted mail delivery to and from the prison, regardless of it's labelling as legal mail or privilege legal mail.

On Nov 15, 2016, Lt. Mason, Seargent Olin and officer Herrest remand all legal material related to case no. 101500067, 715 00692 and 140500439.

limiting factual content to submit to the court due to official interference that has persisted since 2003.

Thus, the statute of limitation may not apply until the legal disability is satisfied that accrued in 2003 by Wayne Holtman's discriminatory actions denying to renew petitioners license due to his disability and not his qualifications.

But, Wayne Holtman actions can be considered a decision of DOPL policy as a Municipality since Holtman was the lead investigator at DOPL for the State of Utah.

Mark Shurtleff action can also be considered a decision of the State of Utah Attorney General policies as a Municipality since Shurtleff was the acting State Attorney General when the charges were filed without probable cause with John Swallow and Sean Reyes failing to correct the policy.

Respondeat Superior is relevant in this case as employees continue to hide behind the fraud and misrepresentation and conspiracy to illegally incarcerate petitioner due to his disability.

1. Petitioners claims Against Holman are not Barred by the Statute of Limitations.

Petitioner claims that in July 2003, Wayne Holman refused to renew petitioners license and required up dated financial audits

In August 2003, petitioner provided first financial audit to Holman from Burdick, Hinton and Hall, the largest accounting firm in southern Utah, but Holman refused to accept the audit.

In September 2003, petitioner provided a second financial audit from Burdick, Hinton and Hall that Holman declined.

In November 2003, after Dean Burdick spoke with Holman, the third and final type of audit was submitted to Holman that Holman declined.

It was at this point that Holman announced his belief that disabled individuals should not be contractors.

Petitioner sold off $4 million dollars in projects for homes in Utah and a 189 lot subdivision in Washington fields and worked in Nevada to complete two subdivisions in Mesquite Nevada.

Holman filed a complaint out DOPL of Nevada who investigated Holman's complaint and renewed petitioners license in Nevada.

Clement Tebbs of BACT joint ventured with petitioner on projects in both Utah and Nevada in 2003-2005.

As counsel stated, analysis of the Statute of Limitations
for ADA claims is more complex, Utah statute states
    <u>§78B-2-109</u>
    A person may not take advantage of a disability, unless it
existed when the person's right of right accrued.
    <u>§78B-2-110</u>
    When two or more disabilities coexist at the time the right
of action accrues, the limitation does not attach until all
are removed.
    <u>§78B-2-224</u>
    A statute of limitations may not be applied to a person's
ability to bring an action during a period in which the person
is legally disability.

Congress' §5 enforcement authority under the fourteenth
Amendment is appropriately exercised only in response to
state transgressions, ... "Limitations stemming from the
nature of the judicial process ... have no application to Congress".
Oregon v. Mitchell 400 U.S. 112, 248, 91 S.Ct 260, 27 L.Ed 2d 272 (1970).
In Fitzpatrick v. Bitzer 427 U.S. 445 (1976) court held Congress
can abrogate a States sovereign immunity when it does so
pursuant to a valid exercise of its power under §5 of the fourteenth
Amendment to enforce the substantive guarantees of that amendment. Id at 456
Finally, Court concluded that title II as it applies to the class of
cases implicating the fundamental right of access to the courts,
constitutes a valid exercise of Congress' §5 authority to enforce
the guarantees of the fourteenth Amendment.
see Tennessee v. lane 541 U.S 509 (2004).

But the joint venture fell apart after Clement Tebbs son got involved who wanted to modify the Joint Venture Agreement and eliminate petitioner out of the project is valued over $30 million.

This fact is identified on an audio recording between John Tebbs and Bullen Nussar that the joint venture agreement between Clement Tebbs and petitioner existed and that John Tebbs wanted to change it.

Petitioner learned shortly there after that John Tebbs did not like to work with polynesian's because he had been beat up as a kid by polynesians.
Whether or not there was a agreement or not in 2005.

Petitioner alleges that this situation was set up by Wayne Hollman and that there is a tacit agreement between Hollman and the Tebbs to carry out Hollman threats.

Tebbs filed a complaint in June 2006 that for engaged Hollman to attack petitioner.

The facts and identity from BACT who filed the complaint continues to be with held from the courts as the Attorney General office and DOPL continue to refuse to produce the unredacted information that this court has not compelled Discovery in 2018.

With Wayne Hollman's discrimination towards petitioner due to disability and John Tebbs inadequacy of being so small to discriminate against Polynesian, these facts of discrimination continue to accrue since 2003 through 2018.

9

produced a partial copy of the BACT Audit hand delivered to Holman and Shurtleff in 2006.

It took the State of Utah 12 years to produce the BACT Audit only after the State records committee forced the discovery. Exhibit #22 of Affidavit

To affirm the fraud upon the State court case No. 101500067, Exhibit 37 are the court transcripts of the witnesses from BACT that will show that the State or public defenders never presented or disclosed the BACT Audit in court.

State and public defenders presented suborn perjured testimony to the court denying the existence of the Joint Venture Agreement. allowing the states-witnesses to go unchallenged.

Claims against Holman should not be dismissed

Petitioners claims be granted on the basis of violation of Title II of the ADA whose disability tolled any statute of limitation action.

The stated claims are based on factual predicates that are proven in the Affidavit or will be submitted at the evidential hearing.

To assert a claim under the ADA, plaintiff must allege that he is disabled or handicapped as that term is defined in each statute. see Kellogg v. Emergy Safety, Inc 544 F.3d 1121, 1124 (10th Cir 2008); Keys Youth Service v. City of Olathe, KS 248 F.3d 1267, 1273 p.5 (10th Cir 2008). see 42 U.S.C 12102(i)

Because Hollmann's defense is based upon laws of the State that Congress' §5 is empowered to abrogate state immunities for violations of title II of ADA, Petitioner is entitled to granting the 1983 complaint to proceed.

Petitioner's claims are plausible

Petitioner will present the (3) financial audits blend delivered to Wayne Hollman in 2003 to prove petitioner's financial ability to qualify for his license that would leave only one reason why Hollman did not renew petitioner's license. Hollman discriminates against the disabled.

Petitioner's medical records from IHC (Exhibit 23), Draper medical records (Exhibit #24), Univ. of Utah medical records (Exhibit 25) that all varify petitioner's disability and the multiple number of injuries caused by medical staff at the Draper Prison.

Because of petitioner's disability, Hollman denied to renew petitioner's license then conspired with Mark Shurtloff to use his resources to incarcerate petitioner, because of his disability.

This conspire between Shurtloff and Hollman is most exposed this year in January 2018, DOPL and Attorney General office

Conclusion

for the reasons stated, Petitioner respectfully request of the court to grant this petition.

I Envoke prison mail box rule 28 U.S.C §1746

June 15, 2018

Certificate of Service

I hereby verify that a true and correct copy of

1) Petitioner response to grant 1983 petition

2) Affidavit and Exhibits was sent by prepaid mail to.

Kyle Kaiser
Asst. Att. General
160 East 300 South 6ᵗʰ Floor
P. O Box 140856
SLC   UT 84114

25/25