## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| AARON DAVID TRENT NEEDHAM, <br><br> Plaintiff, <br><br> v. <br><br> SIDNEY ROBERTS, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** <br><br> Case No. 2:15-CV-250-CW <br><br> District Judge Clark Waddoups |

Plaintiff, Aaron David Trent Needham, asserts that Defendant, Sidney Roberts, violated his right to be free of cruel and unusual punishment under the Eighth Amendment to the United States Constitution. *See* 42 U.S.C.S. § 1983 (2019). Specifically, he contends Defendant provided inadequate medical care during his stay at Utah State Prison (USP). (Doc. No. 37.) His claim is worded as follows in his Fourth Amended Complaint:

> [P]etitioner's infections got worse as the reduction of antibiotics by medical to 25% of the recommended dose by Dr. Roberts kept petitioner sick during his time in the infirmary so when he got to Baker Block another type of infection attacked petitioner. Dr. Roberts spoke with petitioner's doctors to verify medications and treatment that have resulted in the loss of petitioner's right kidney.

(*Id*. at 12.) This is the sole language implicating Defendant and it is therefore the only matter the Court will address in this Order.[1]

---

[1] This case has involved many defendants and many claims that have been pared down over time. In an order on April 19, 2019, the Court clarified, "The sole remaining defendant in this case is Defendant Roberts and the sole remaining claim is that Defendant Roberts provided inadequate medical care. Nothing else will be considered by the Court in this case at any future time." (Doc. No. 109, at 6.) That means that, even though Plaintiff has continued to refer to other defendants and other claims since that Order, the only defendant and claim remain Defendant Roberts and inadequate medical treatment. Nothing else will be discussed or analyzed here.

Defendant filed a *Martinez* report[2] with medical and other records and his declaration as to Plaintiff's treatment. (Doc. No. 84-85 & 121-22.) Plaintiff's relevant evidentiary response to the *Martinez* report consists of copies of medical records, scattered throughout a variety of documents and many of them duplicative of Defendant's filings. (E.g., Doc. Nos. 92, 105, 120 & 124.) The Court has examined them all thoroughly.

Defendant now moves for summary judgment on the basis of qualified immunity.

## QUALIFIED IMMUNITY STANDARD

When determining whether to grant summary judgment, this Court must examine the evidence filed by the parties to determine whether any genuine issues of material fact exist and, if not, correctly apply relevant substantive law to the undisputed facts. *Grissom v. Roberts*, 902 F.3d 1162, 1167 (10th Cir. 2018).

> Individual defendants sued for damages under § 1983 may raise a defense of qualified immunity. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (internal quotation marks omitted). This standard arises from balancing two important but contrary

---

[2] *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) (approving district court's practice of ordering prison administration to prepare report to be included in pleadings in cases when prisoner has filed suit alleging constitutional violation against institution officials).

In *Gee v. Estes*, 829 F.2d 1005 (10th Cir. 1987)*,* the Tenth Circuit explained the nature and function of a *Martinez* report, saying:

> Under the *Martinez* procedure, the district judge or a United States magistrate [judge] to whom the matter has been referred will direct prison officials to respond in writing to the various allegations, supporting their response by affidavits and copies of internal disciplinary rules and reports. The purpose of the *Martinez* report is to ascertain whether there is a factual as well as a legal basis for the prisoner's claims. This, of course, will allow the court to dig beneath the conclusional allegations. These reports have proved useful to determine whether the case is so devoid of merit as to warrant dismissal without trial.

*Id.* at 1007.

interests. On the one hand, "an action for damages may offer the only realistic avenue for vindication of constitutional guarantees." *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982). On the other hand, exposing public officials to liability for damages presents its own "social costs[,] includ[ing] the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office." *Id.* And, perhaps most significantly, "there is the danger that fear of being sued will dampen the ardor of all but the most resolute, or the most irresponsible public officials, in the unflinching discharge of their duties." *Id.* (brackets and internal quotation marks omitted).

"Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (internal quotation marks omitted). Thus, when a defendant has raised qualified immunity as a defense, the plaintiff must establish (1) that the defendant's action violated a federal constitutional or statutory right; and (2) that the right violated was clearly established at the time of the defendant's actions. *See Thomson v. Salt Lake City*, 584 F.3d 1304, 1312 (10th Cir. 2009). Under this test, "immunity protects all but the plainly incompetent or those who knowingly violate the law." *Kisela*, 138 S. Ct. at 1152 (internal quotation marks omitted).

The test imposes a "heavy two-part burden." *Casey v. W. Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1327 (10th Cir. 2007) (internal quotation marks omitted). If the plaintiff fails to satisfy either part of the two-part inquiry, a court must grant the defendant qualified immunity. *See Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). The court has discretion to decide which of the two prongs of the qualified-immunity analysis to address first. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment...." *Clark v. Edmunds*, 513 F.3d 1219, 1222 (10th Cir. 2008) (internal quotation marks omitted).

*Id.* at 1167-68.

To educate Plaintiff about his duty in responding to a summary-judgment motion, the

Court stated in an order,

Plaintiff is notified that if Defendant moves for summary judgment Plaintiff may not rest upon the mere allegations in the complaint.

> Instead, as required by Federal Rule of Civil Procedure 56(e), to survive a motion for summary judgment Plaintiff must allege specific facts, admissible in evidence, showing that there is a genuine issue remaining for trial.

(Doc. No. 10, at 5-6.)

Based on the undisputed material facts below, the Court concludes that, under the qualified immunity defense, Plaintiff has not established the first necessary prong of his burden: that Defendant's actions violated a federal constitutional right.

## UNDISPUTED MATERIAL FACTS

• Before arriving at USP, Plaintiff had been treated for coccidioidomycosis (Disease) in St. George, Utah, at Dixie Regional Medical Center (DRMC), by Dr. Jamal Horani, infectious disease specialist. (Doc. No. 85-3, at 4.)

• Disease is pulmonary- or hematogenous-disseminated disease caused by the fungi *Coccidioides immitis*. (*Id*.) Plaintiff was prescribed anti-fungal medicine fluconazole (brand name: Diflucan) to treat Disease. (*Id*.)

• 5/9/11 - Plaintiff's potential Disease symptoms treated by Dr. Zahabia. (Doc. No. 85-1, at 2-4.)

• 4/17/12 - Dr. William Cobb's Out Patient Clinic Note indicating Disease blood work done and Diflucan at 800MG per day prescribed. (*Id*. at 67.)

• 7/17/12 - Dr. Horani's Out Patient Clinic Note indicating Disease blood work done and Diflucan at 800MG per day prescribed. (*Id*. at 65-66.)

• 10/18/12 - Dr. Horani's Outpatient Clinic Report indicating Disease blood work done and Diflucan at 1000MG per day prescribed. (*Id*. at 63-64.)

• 11/20/12 - Dr. Horani's Outpatient Clinic Report indicating Disease blood work done and Diflucan at 1000MG per day prescribed. (*Id*. at 61.)

• 1/29/13 - Dr. Horani's Outpatient Clinic Report indicating Disease blood work done and Diflucan at 800MG per day prescribed. (*Id*. at 59.)

• 4/16/13 - Dr. Horani's Outpatient Clinic Report indicating Disease blood work done and Diflucan at 800MG per day prescribed. (*Id*. at 57.)

• 7/17/13 - Dr. Horani's Outpatient Clinic Report indicating results of examination. (Doc No. 120-2, at 22.)

• 7/30/13 - Dr. Horani's Outpatient Clinic Report indicating Disease blood work done and Diflucan at 800MG per day prescribed. (Doc. No. 85-1, at 55.) Dr. Horani wrote the following letter: "Mr. Needham has a chronic infection that requires lifelong treatment. . . . If you have any questions, please feel free to contact me at your convenience." (Doc. No. 124-8, at 2.)

• At relevant time, Defendant was physician at USP. (Doc. No. 85-3, at 3.)

• Unknown dates, apparently soon after Plaintiff entered USP in fall of 2013 - Defendant reviewed Plaintiff's DRH records and obtained more information from Dr. Horani, who said that Plaintiff had been prescribed a lifelong suppressive therapy (fluconazole) with a dosage then at 800 mg. (*Id*. at 5.) Based on Dr. Horani's past treatment and concurrence, Defendant set a treatment plan to do antibody blood tests on Plaintiff every three months as a way of determining how to best adjust Plaintiff's fluconazole dosage (trying to balance risk of infection versus risk of drug's toxicity). (*Id*.) In other words, fluconazole dosage would be regularly monitored and adjusted to ensure medication effectively reduced symptoms while avoiding unwanted side effects. (*Id*.) Fluconazole was never discontinued but adjusted to balance need to control infection against need to avoid toxicity. (*Id*.) Defendant made Plaintiff aware of treatment plan. (*Id*. at 6.) Nurse Aaron Douglas sent Plaintiff's test results to Dr. Horani every three months to

update Dr. Horani on Plaintiff's condition. Defendant based his care of Plaintiff on University of Utah's expert recommendations. (*Id*.)

• 10/16/13 - USP Dr. Burnham noted fluconazole dosage of 800MG and authorized outside consult at University Medical Center. (Doc. No. 85-1, at 86, 97, 448.)

• 10/20/13 - Plaintiff advised fluconazole would be refilled next day. (*Id*. at 434.)

• 10/22-11/1/13 - Plaintiff's medication log showing fluconazole 200MG tablet dispensed four times per day (except three on 10/26, 10/29, 10/31, and 11/1; and two on 10/30). (*Id*. at 114.)

• 10/24/13 - Defendant first evaluated Plaintiff, where he presented with Disease. (Doc. No. 85-3, at 3.) Defendant was unfamiliar with Disease, so sent Plaintiff to University of Utah Infectious Disease Clinic (IDC) for exam and reordered fluconazole. (*Id*. at 4.) IDC doctors were also unfamiliar with this rare Disease. (*Id*.) Plaintiff signed "Authorization for Release of Medical Records" regarding his Dr. Horani records to be sent to USP. (Doc. No. 85-1, at 54.) Intermountain Healthcare Lab Results on Disease Antibodies Panel done. (*Id*. at 69.)

• 10/30/13 - Plaintiff's blood test results reported, ordered by Defendant. (*Id*. at 115.)

• 11/2-11/5/13 - Plaintiff's medication log showing fluconazole 200MG tablet dispensed four times per day (except just one on 11/3 and three on 11/5). (*Id*. at 102.)

• 11/6-11/17/13 - Plaintiff's medication log showing fluconazole 200MG tablet dispensed AM and PM, each day (except AM on 11/6, 11/7, 11/14 and 11/15; and PM on 11/12). (*Id*. at 113.)

• 11/3/13 - 359 days of fluconazole prescribed. (*Id*. at 77.)

• 11/6/13 - Updated annual fluconazole prescription of one 200MG tablet daily, ordered by Defendant. (Doc. No. 122, at 18-19.)

• 11/15/13 - On form entitled, "Outside Consult Detail" (ordered by Dr. Burnham on October 16, 2013), University Medical Center Dr. Clifford Schneider hand wrote, "Drop fluconazole to 400 mg a day. No role for 800 mg of fluconazole for cocci." (Doc. No. 92-4, at 4.) Next to that was written by unidentified person: "Do not change dose. Obtain records from St. George IHC and contact ID physician he sees to discuss dose." (*Id*.)

• 11/18 - 12/3/13 - Plaintiff's medication log showing fluconazole 200MG tablet dispensed AM and PM, each day (except PM on 11/28 and 12/3). (Doc. No. 85-1, at 102.)

• 11/27/13 - Defendant scheduled blood tests. (*Id*. at 363.)

• 11/29/13 - Plaintiff's blood test results reported, ordered by Defendant. (*Id*. at 107.)

• 12/4/13 - Plaintiff's blood test results reported, ordered by Defendant. (*Id*. at 104.)

• 12/7/13 - Thirty days of anti-fungal cream prescribed. (*Id*. at 76.)

• 1/22/14 - Blood tests ordered. (*Id*. at 262.)

• 2/4/14 - Blood test results reported, ordered by Defendant. (Doc. No. 92-4, at 14.)

• 4/5/14 - Blood test results reported, ordered by Defendant. (Doc. No. 92-4, at 23.)

• 5/29/14 - Updated annual fluconazole prescription of four 200MG tablets daily, ordered by Defendant. (Doc. No. 122, at 18.)

• 7/5/14 - Blood test results reported, ordered by Defendant. (Doc. No. 92-4, at 34.)

• 10/17/14 - Blood test results reported, ordered by Defendant. (Doc. No. 122, at 7.)

• 2/21/17 - Notes from office visit to University of Utah kidney specialist, requested by Dr. Burnham, regarding "atrophic right kidney." (Doc. No. 124-9, at 2.) Specialist, Dr. Andrea Nelson, outlined history of illness:

> Aaron David is a 48 year old gentleman with history of paraplegia
> at the age of 18, wheel chair bound and with multiple infections

followed by Dr. Rosado who is here for evaluation of right atrophic kidney seen on CT enterography last month. He has about 2 UTI's per year, did not have recurrent infections as a child and only developed urinary infections after self cathing started when he became paralyzed at age 18. No history of kidney stones. He was placed on Bactrim yesterday and stopped the levofloxacin. K in January was 5.1, not repeated. Urinalysis consistently negative for protein and kidney function has been normal.

(*Id.*) Dr. Nelson's assessment was: "Atrophic right kidney: likely congenital and no history of reflux or recurrent infections prior to paraplegia at age 18. This is likely not a site of recurrent infections as he only has about 1-2 per year and self catheterizes." (*Id.*)

• 6/4/17 - Plaintiff signed Fourth Amended Complaint at issue here. (Doc. No. 37, at 15.)

• Defendant's treatment of Disease would have had no effect on Plaintiff's kidney issues. (Doc. No. 85-3, at 7.)[3]

## ANALYSIS

To succeed under the Eighth Amendment, Plaintiff must demonstrate acts or omissions harmful enough to show deliberate indifference that offends "'evolving standards of decency.'" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (citation omitted). That amendment proscribes only deliberate indifference constituting the "'unnecessary and wanton infliction of pain.'" *Id.* at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (joint opinion)). Moreover, Plaintiff must "allege acts or omissions sufficiently harmful to evidence deliberate indifference to *serious* medical needs." *Id.* at 104 (emphasis added). Plaintiff has to show that Defendant's actions were more than negligent. After all, negligent failure to give sufficient medical care, even touching medical malpractice, does not equal a constitutional violation. *Id.* at 106.

---

[3]Plaintiff recently filed medical records discussing treatment after June 4, 2017. (Doc. No. 124.) These records are disregarded as they are dated beyond the claim stated in the Fourth Amended Complaint. (Doc. No. 37.)

*Estelle*'s deliberate-indifference standard has an objective component asking whether the alleged deprivation is "sufficiently serious," and a subjective component asking whether the defendant official "knows of and disregards an *excessive* risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (emphasis added). The subjective component questions whether prison officials acted with a "sufficiently culpable state of mind." *Clemmons v. Bohannon*, 956 F.2d 1523, 1525-26 (10th Cir. 1992). "[E]ven if a prison official has knowledge of a substantial risk of serious harm to inmates, he is not deliberately indifferent to that risk unless he is aware of and fails to take reasonable steps to alleviate the risk." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008). Thus, Plaintiff must show he suffered from a serious condition that Defendant knew about and ignored, and that by ignoring Plaintiff's condition, or failing to take reasonable steps to alleviate the risk, Defendant caused Plaintiff serious physical harm or the unnecessary, wanton infliction of pain.

Here, Plaintiff's claims fail because Defendant did not disregard substantial risk of serious harm to Plaintiff's health. Rather, based on uncontroverted evidence, Defendant answered each of Plaintiff's numerous medical requests and referred him out for testing and treatment as deemed necessary.

When the only dispute about a prisoner's medical treatment regards adequacy, "'courts are generally reluctant to second guess [professional] medical judgments.'" *Maez v. Merrill*, No. 2:07-CV-986 TC, 2008 U.S. Dist. LEXIS 72842, at *6-7 (D. Utah September 23, 2008) (unpublished) (quoting *Ferranti v. Moran*, 618 F.2d 888, 891 (1st Cir. 1980)); *see Fitzke v. Shappell*, 468 F.2d 1072, 1076 (6th Cir. 1972). Mere disagreement between a prisoner and prison medical staff as to diagnosis or treatment does not support a deliberate-indifference

claim. *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993); *LeDoux v. Davies*, 961 F.2d 1536, 1536 (10th Cir. 1992). Eighth Amendment violations occur only when medical treatment is so grossly incompetent, inadequate, or excessive as to "'shock the conscience or be intolerable to fundamental fairness.'" *Whitehead v. Burnside*, 403 F. App'x 401, 403 (11th Cir. 2010) (citation omitted). An inmate's belief that he should have been treated differently does not show "deliberate indifference." *Scott v. Gibson*, 37 F. App'x 422, 423 (10th Cir. 2002) (unpublished) (citation omitted).

Here, Plaintiff's claims are, at best, a "difference of opinion" as to his fluconazole dosage during a temporary span of time. *See Olson* 9 F.3d at 1477. From the moment Defendant first saw Plaintiff, he jumped to action, calling past medical providers, requesting records, consulting with outside specialists, and tailoring a special treatment plan to Plaintiff's very specific needs. The extensive medical records before the Court reveal that on a regular basis and whenever Plaintiff reported symptoms, his treatment was reviewed, exams done, observations made, testing arranged, prescriptions offered, and medical equipment and wound-care conscientiously provided. Most importantly, given the claim specifies that a lower dosage of fluconazole was given for a time than Plaintiff thought necessary, fluconazole was never denied; the dosage was just regularly adjusted based on blood-test results.

Plaintiff's allegations that he did not receive adequate and necessary medical care boil down to nothing more than Plaintiff's differing opinion as to the judgments made by medical professionals[4] who continually evaluated Plaintiff's conditions during the time in question. Plaintiff's medical records clearly show his concerns and requests were consistently addressed.

As a matter of law, offering treatment based on a professional's medical judgment, even if it is not what an inmate wants, does not rise to the level of deliberate indifference. *Self v. Crum*, 439 F.3d 1227, 1232-33 (10th Cir. 2006) ("[T]he subjective component is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment. Matters that traditionally fall within the scope of medical judgment are such decisions as whether to consult a specialist . . . [W]here a doctor orders treatment consistent with the symptoms presented and then continues to monitor the patient's condition, an inference of deliberate indifference is unwarranted under our case law."). Also, when records show an inmate has been monitored, attended to, and treated often, the inmate cannot show deliberate indifference. *Wingfield v. Robinson*, No. 10-CV-01375, 2011 U.S. Dist. LEXIS 125825, at *32 (D. Colo. August 10) (missing subjective intent for deliberate indifference when

---

[4]Plaintiff states in one argument:

> Dr. Clifford Schneider authorization to reduce the dosage to 200 mg fluconazole ignoring the test results on 1-29-2014 showing the effects of the disease were rising that by April 1, 2014 the titer score was 1:16 increasing the effects of the disease. . . . In exhibit 7 the titer score remained at 1:16 that happen to be at the same time on April 9, 2014 and May 30, 2014.

(Doc. No. 124-2, at 1.)

This evinces a recognition that Defendant was not even necessarily the one to "authorize" a lower dosage. It also shows that Plaintiff understood that there was a team approach to his medical care; Defendant involved many people, including this specialist who apparently opined at one point that the fluconazole dosage should be lowered based on his medical judgment.

defendants responded to grievances, examined plaintiff, and prescribed treatment more than fifteen times). Here, Plaintiff was consistently evaluated by Defendant and others. And, Plaintiff's medical records show that Plaintiff received ongoing medical help from Defendant and others for each medical issue raised.

As noted, Plaintiff sues Defendant because he disagrees with a medication dosage adjusted temporarily. But, an "informed judgment" as to appropriate treatment does not amount to deliberate indifference. *Supre v. Ricketts*, 792 F.2d 958, 963 (10th Cir. 1986). Here, even if Plaintiff could prove that alternative treatment was medically appropriate, Plaintiff still cannot meet his burden of showing Defendant was unreasonable in relying on his own judgment and test results, and administering treatment accordingly. And, the undisputed evidence shows that Plaintiff's kidney issues were not linked to his fluconazole dosage.

The undisputed material facts show Defendant was not deliberately indifferent to Plaintiff's medical treatment. Thus, Defendant's actions did not violate a federal constitutional right and he is due qualified immunity.

## CONCLUSION

IT IS ORDERED that Defendant's Motion for Summary Judgment is GRANTED, (Doc. No. 87). The inadequate-medical-care claim is DISMISSED WITH PREJUDICE. All other Defendants and claims having been dismissed in past orders, this action is CLOSED.

Dated this 4th day of October, 2019.

BY THE COURT:

JUDGE CLARK WADDOUPS
United States District Court